PRESENT: Keenan, Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.

JOHN JAY CARROLL

                                         OPINION BY
v.  Record No. 082566        JUSTICE LEROY F. MILLETTE, JR.
                                     November 5, 2009
GENE M. JOHNSON, DIRECTOR OF
THE DEPARTMENT OF CORRECTIONS


            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                     Charles S. Sharp, Judge

     This appeal from an order dismissing a petition for a

writ of habeas corpus presents two issues.  First, whether a

circuit court has jurisdiction over a petition for a writ of

habeas corpus when an order entered in the petitioner's favor

would apply a credit for time served against a current

sentence, but would not result in his immediate release from

confinement.  Second, whether the circuit court erred when it

ruled that John J. Carroll's petition lacked merit and denied

Carroll an evidentiary hearing to resolve whether he was

entitled to a credit toward his sentence for time served

awaiting trial in Virginia on a detainer from another state.

                     Facts and Proceedings

     Applying familiar principles of appellate review, we will

state the facts in the light most favorable to the

Commonwealth, the prevailing party below.  Williams v.

Commonwealth, 278 Va. 190, 191, 677 S.E.2d 280, 281 (2009).

Carroll was serving a prison sentence in New Jersey when he was brought to Virginia pursuant to the Interstate Agreement on Detainers,[1] Code § 53.1-210, to face trial for criminal offenses in Stafford County.  Carroll was housed in a Virginia jail while awaiting trial.  After his trial, Carroll was convicted of two offenses and sentenced to a total term of imprisonment of 13 years, with the sentences running consecutively.  The sentencing order stated:  "The defendant shall be given credit for time spent in confinement while awaiting trial pursuant to Code § 53.1-187."[2]  The order also stated:  "These sentences shall run consecutively with all other sentences."  Shortly after his trial was concluded, Carroll was sent back to New Jersey to serve the remainder of his sentence in that state.  In total, Carroll spent 288 days in Virginia custody before being returned to New Jersey.

After Carroll finished serving his New Jersey sentence he was brought back to Virginia to serve his 13 year sentence on

---

[1] For a history of the promulgation of the Agreement, see, e.g., United States v. Ford, 550 F.2d 732, 740 n.24 (2nd Cir. 1977) (citing James V. Bennett, The Last Full Ounce, 23 Fed. Prob. 20, 22-23 (1959)).

[2] Code § 53.1-187 provides, in pertinent part:

> Any person who is sentenced to a term of
> confinement in a correctional facility shall
> have deducted from any such term all time
> actually spent by the person . . . in a state
> or local correctional facility awaiting trial
> . . . .

the two offenses for which he was convicted.  Shortly after his arrival, Carroll was given an "update sheet" from the Virginia Department of Corrections (VDOC) which indicated that he did not receive credit toward his Virginia sentence for the 288 days he spent in custody in Virginia incident to his trial.  Carroll corresponded with VDOC seeking credit for the 288 days, but VDOC denied such credit noting that the 288 days counted towards Carroll's New Jersey sentence, not his Virginia sentence.

Thereafter, Carroll filed a petition for a writ of habeas corpus challenging VDOC's refusal to give him 288 days credit towards his Virginia sentence for the time he spent "in Virginia's custody on the Stafford charges."  The Commonwealth, on behalf of the respondent, filed an answer and a motion to dismiss.  The Commonwealth argued that the circuit court lacked habeas corpus jurisdiction over Carroll's claim because an order entered in his favor would not result in his immediate release from detention, but would only result in 288 days of jail credit toward his 13 year sentence.  The Commonwealth also asserted that Carroll's claim is without merit because Virginia "borrowed" Carroll from New Jersey authorities for court purposes under the Interstate Agreement on Detainers.  When Carroll came to Virginia he was serving his New Jersey time, and he received credit for 288 days

3

toward his New Jersey sentence pursuant to the Interstate Agreement on Detainers.

The Commonwealth provided the circuit court with an affidavit by Wendy K. Brown, Manager of VDOC's Court and Legal Services Section for VDOC, who is responsible for computing inmates' sentences. Ms. Brown stated that Carroll was initially "borrowed" from New Jersey pursuant to the Interstate Agreement on Detainers, and while he was physically held in Virginia, he was still serving his New Jersey sentence. Ms. Brown also stated that the 288 days were credited toward Carroll's New Jersey sentence, thus Carroll was not entitled to credit toward his Virginia sentence for the same time.

The circuit court denied Carroll's petition for a writ of habeas corpus. The circuit court held that it did "not have habeas corpus jurisdiction over [Carroll's] claim because even a result in his favor would not result in his immediate release from confinement." Furthermore, assuming the circuit court had habeas corpus jurisdiction, it denied Carroll's petition on the merits holding that "according to the affidavit evidence presented to the Court, the Petitioner has been properly credited with time he spent in jail towards his sentence in another state."

We awarded Carroll this appeal.

Analysis

I. Jurisdiction

Carroll argues that the circuit court erred in holding that it did not have jurisdiction over his habeas corpus claim because a credit of 288 days against his Virginia sentence would not result in his immediate release from detention. Carroll contends that an "immediate release" from detention is not required for habeas corpus jurisdiction. According to Carroll, habeas corpus jurisdiction should lie when the relief sought will directly impact the duration of the petitioner's custody or incarceration.

The Commonwealth agrees with Carroll on this issue. The Commonwealth further asserts that the viability of the "immediate release rule," as established in McDorman v. Smyth, 187 Va. 522, 525, 47 S.E.2d 441, 443 (1948), is called into question in light of subsequent statutory amendments, United States Supreme Court decisions, and decisions of this Court. The Commonwealth contends this Court should find habeas corpus jurisdiction is available where the effect of an order entered in the petitioner's favor will result in shortening time the petitioner must serve in confinement.

In McDorman, this Court adopted the "immediate release rule," which provides that habeas corpus jurisdiction lies only where the release of the petitioner from his immediate

5

detention will follow as a result of a judgment in his favor. We stated:

> *Habeas corpus* is a writ of inquiry granted to determine whether a person "is detained without lawful authority." Virginia Code, 1942 (Michie), section 5848. <u>It is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor.</u> It is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not affect the lawfulness of his immediate custody and detention. It cannot be used to modify or revise a judgment of conviction. <u>McNally v. Hill</u>, 293 U.S. 131, 55 S. Ct. 24, 79 L. Ed. 238 [(1934)].

<u>Id.</u> at 525, 47 S.E.2d at 443-44 (emphasis added).

When <u>McDorman</u> was decided, VDOC calculated service of individual sentences seriatim, and McDorman, who was serving a series of sentences, contended that some of his sentences, which were to take effect at the expiration of his current sentence, were invalid. <u>Id.</u> at 523-25, 47 S.E.2d at 443. We determined that the sentence McDorman was currently serving at the time of the petition was valid, and dismissed his petition because even a successful claim against sentences he had not yet begun serving would not result in his immediate release. <u>Id.</u> at 529, 525, 47 S.E.2d at 445, 443.

Subsequent to <u>McDorman</u>, the scope of the writ of habeas corpus was expanded. Current Code § 8.01-654(B)(3) provides that a petitioner "may allege detention without lawful authority through challenge to a conviction, although the

6

sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner." Pursuant to the current statutory authority, a defendant in the same situation as McDorman could challenge a conviction that he had not yet begun to serve, even though a successful challenge would not result in his immediate release.

Recently, we found jurisdiction to grant a writ of habeas corpus for a defendant to challenge one of two concurrent sentences on two manslaughter convictions. West v. Director, Dep't of Corrs., 273 Va. 56, 639 S.E.2d 190 (2007). We stated that our decision would result in his release from immediate detention on that conviction and sentence, which complied with "the purpose and scope of the writ of habeas corpus, which is to test the legality of a prisoner's detention." Id. at 66, 639 S.E.2d at 197.

When this Court decided McDorman, we specifically relied on the United States Supreme Court's decision in McNally v. Hill, 293 U.S. 131 (1934), in adopting the "immediate release rule." However, the "immediate release rule" has since been called into question because the McNally decision was overruled by the Supreme Court in Peyton v. Rowe, 391 U.S. 54 (1968). In Peyton, the Supreme Court stated:

7

> [T]o the extent that McNally relied on the notion that immediate physical release was the only remedy under the federal writ of habeas corpus, it finds no support in the statute and has been rejected by this Court in subsequent decisions.
>
> We overrule McNally and hold that a prisoner serving consecutive sentences is "in custody" under any one of them for purposes of [28 U.S.C.] § 2241 (c)(3). This interpretation is consistent with the statutory language and with the purpose of the writ of habeas corpus in the federal courts.

Id. at 67.

In Peyton, the Supreme Court noted several practical reasons for abrogating the "immediate release rule," including the advantage in having the trial court resolve factual disputes and the detriment to the petitioner of possible confinement in excess of his lawful sentence if he is required to wait until almost the end of that sentence to litigate his complaint:

> Clearly, to the extent that the rule of McNally postpones plenary consideration of issues by the district courts, it undermines the character of the writ of habeas corpus as the instrument for resolving fact issues not adequately developed in the original proceedings.
>
> . . . .
>
> But the prematurity rule of McNally in many instances extends without practical justification the time a prisoner entitled to release must remain in confinement. . . . [E]ach day they are incarcerated under those convictions while their cases are in the courts will be time that they might properly have enjoyed as free men.

Id. at 63-64.

8

The Supreme Court's decision in Peyton was based on historical use of the writ of habeas corpus under common law and the language of the federal habeas corpus statute, 28 U.S.C. § 2241(c)(3) (2006 & Supp. I 2007).[3]  In Peyton, the Supreme Court held that a petitioner serving consecutive sentences is "in custody" under any of the sentences for purposes of the federal habeas corpus statute.  For additional support, the Supreme Court further noted that "[s]ince 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require.' "  Id. at 66-67 (citation omitted).

A few years after Peyton was decided, in Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court again addressed whether federal habeas corpus was the appropriate remedy when an order entered in the petitioner's favor would not result in his immediate release.  The Court concluded:

> Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy.  For recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that

---

[3] 28 U.S.C. § 2241, in pertinent part, provides:
(c)  The writ of habeas corpus shall not extend to a prisoner unless . . .
   (3)  He is in custody in violation of the Constitution or laws or treaties of the United States.

9

> the writ is available as well to attack future
> confinement and obtain future releases.

Id. at 487 (emphasis added).

The Supreme Court's decisions in Peyton and Preiser strongly support the argument that the "immediate release rule" requiring immediate release from detention should be abrogated in Virginia. We agree with the parties that the "immediate release rule" as established in McDorman needs to be readdressed in light of statutory changes and subsequent United States Supreme Court authority. We, therefore, overrule McDorman to the extent that habeas corpus jurisdiction is predicated upon an immediate release from detention.

A reversal of McDorman is not only predicated by the language of Code § 8.01-654(B)(3), but also by the practical and fairness considerations expressed by the Supreme Court in Peyton and Preiser. Circuit courts are well suited to resolve factual disputes related to convictions and sentences. Furthermore, it is obvious that factual disputes of this nature are more accurately resolved when the events are fresh and memories clear. Moreover, there is nothing in our habeas corpus jurisprudence which requires a petitioner to wait so long to pursue this remedy that he or she is at peril of being

required to serve a sentence longer than his or her lawful sentence while his or her dispute is being resolved.

The holding of McDorman also relies on an unnecessarily narrow interpretation of Virginia's habeas corpus statute. Code § 8.01-654(A)(1) provides:

> The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority.

(Emphasis added.)

The statute extends the availability of the writ of habeas corpus to prisoners who claim they are "detained without lawful authority." In interpreting this language, we are guided by the principle of statutory construction that remedial statutes are to be construed liberally. Greenberg v. Commonwealth, 255 Va. 594, 600, 499 S.E.2d 266, 269 (1998). Additionally, we must consider the ordinary and plain meaning of statutory terms. Winborne v. Virginia Lottery, 278 Va. 142, 148, 677 S.E.2d 304, 306 (2009).

So viewed, the statutory phrase "detained without lawful authority" does not limit the availability of a writ of habeas corpus to situations in which a result in the petitioner's favor will result in his or her immediate release. Rather, Code § 8.01-654(A)(1) allows a petitioner to challenge the

11

lawfulness of the entire duration of his or her detention so long as an order entered in the petitioner's favor will result in a court order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement. Here, Carroll is "detained" for 13 years pursuant to his sentencing order, which includes the 288 days for which he is seeking credit. Thus, Carroll is "detained without lawful authority" within the meaning of the statute if his sentence, including the 288 days for which he seeks credit, is imposed without lawful authority. Based on Carroll's claim, an order entered in his favor would result in a court order that, on its face and as a matter of law, would directly impact the duration of Carroll's imprisonment by shortening his sentence by 288 days. Therefore, the circuit court erred in holding that it did not have habeas corpus jurisdiction to entertain Carroll's claim.

Just as the Supreme Court in Peyton decided that the language "in custody" in the federal habeas corpus statute does not impose an "immediate release rule," 391 U.S. at 67, the language "detained without lawful authority" in Code § 8.01-654(A)(1) does not impose an "immediate release rule" in the Virginia system. Our interpretation of Code § 8.01-654(A)(1) also assures that

12

> [m]eaningful factual hearings on alleged
> constitutional deprivations can be conducted before
> memories and records grow stale, and at least one
> class of prisoners will have the opportunity to
> challenge defective convictions and obtain relief
> without having to spend unwarranted months or years
> in prison.

Peyton, 391 U.S. at 65.

Our decision today does not dramatically expand habeas corpus jurisdiction. Our holding only concerns cases in which an order, entered in the petitioner's favor, interpreting a conviction or a sentence, will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement. Our holding does not extend habeas corpus jurisdiction to cases in which an order entered in the petitioner's favor will only give rise to a possibility of reducing the petitioner's term of imprisonment. Thus, disputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits, or challenges to parole board decisions, are not proper matters for habeas corpus jurisdiction because an order entered in the petitioner's favor in those cases will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence. See Virginia Parole Board v. Wilkins, 255 Va. 419, 420-21, 498 S.E.2d 695, 695

(1998) (while relying on the "immediate release rule," we held the circuit court did not have habeas corpus jurisdiction over petitioner's challenge to the Parole Board's denial of discretionary parole and a two year deferral of the next parole review).

## II.  Merits of Carroll's Habeas Corpus Claim

Having decided that habeas corpus jurisdiction lies in Carroll's case, we now review the circuit court's determination that Carroll's habeas corpus claim lacked merit.

Carroll contends that the circuit court erred in holding that, assuming it had jurisdiction, Carroll was not entitled to relief because he had been given credit towards his New Jersey sentence for the 288 days spent in Virginia custody. Carroll argues that the language of the sentencing order and Code § 53.1-187 are clear and require that he be credited with 288 days toward his Virginia sentence regardless of whether New Jersey also gave him credit for those days. Alternatively, should the Court determine that it is relevant whether New Jersey gave him credit for the 288 days, Carroll asserts the circuit court erred in denying Carroll an evidentiary hearing on this issue because Ms. Brown's claim that New Jersey gave Carroll credit for the 288 days is "nothing more than a bare assertion."

14

The Commonwealth argues that the circuit court did not err in holding that Carroll's claim lacked merit. According to the Commonwealth, Carroll's New Jersey sentence was properly credited the 288 days by operation of law pursuant to the Interstate Agreement on Detainers while Carroll was in Virginia custody incident to his trial. The Commonwealth asserts that Carroll's argument that he is entitled to credit for the 288 days toward both his Virginia and New Jersey sentences is without merit based on the sentencing order's language that "[t]hese sentences shall run consecutively with all other sentences." The Commonwealth also contends the circuit court properly denied Carroll an evidentiary hearing because Carroll received credit for 288 days toward his New Jersey sentence by operation of law, and Carroll has not claimed in his petition for a writ of habeas corpus that New Jersey did not credit the 288 days against his sentence in that state.

The standard of review regarding the circuit court's decision denying Carroll's petition on the merits is as follows:

> The question whether a prisoner is entitled to habeas relief is a mixed question of law and fact. Consequently, a circuit court's conclusions of law are not binding on this Court but are subject to review to ascertain whether the circuit court correctly applied the law to the facts.

15

<u>Green v. Young</u>, 264 Va. 604, 608-09, 571 S.E.2d 135, 138

(2002) (citations omitted).

As previously stated, Code § 8.01-654(A)(1), provides:

The writ of habeas corpus ad subjiciendum shall be
granted forthwith by the Supreme Court or any
circuit court, to any person who shall apply for the
same by petition, showing by affidavits or other
evidence <u>probable cause</u> to believe that he is
detained without lawful authority.

(Emphasis added.)

The issue before us is whether there is probable cause to

believe that Carroll is detained without lawful authority

based upon the allegation that he did not receive credit

towards his Virginia sentence for the 288 days he spent in

Virginia custody incident to his trial.  Because we believe

Carroll is not entitled to credit for 288 days toward his

Virginia sentence as a matter of law, the circuit court did

not err in denying Carroll's petition for a writ of habeas

corpus on the merits and likewise denying him an evidentiary

hearing.

Carroll's transfer to Virginia from New Jersey was made

pursuant to the Interstate Agreement on Detainers, of which

Virginia and New Jersey are party states.  Code § 53.1-210;

N.J. Stat. Ann. §§ 2A:159A-1, through -159A-15.  The

Interstate Agreement on Detainers, Article V(a), provides that

a state in which a prisoner is currently incarcerated (sending

16

state), in this case New Jersey, may send that prisoner to a state in which the prisoner has outstanding charges (receiving state), in this case Virginia, to stand trial.  Code § 53.1-210.  The Interstate Agreement on Detainers, Article V(d), describes this as "temporary custody," which it provides is

> only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

The Interstate Agreement on Detainers, Article V(f), also provides that the sending state sentence continues to run during an inmate's temporary custody in another jurisdiction: [4]

> During the . . . temporary custody . . . time being served on the sentence [imposed by the sending state] shall continue to run . . . .

The Interstate Agreement on Detainers, Article V(g), further states:

> For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state and any escape from temporary custody may be dealt with in the same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

---

[4] During the period involved in this case, the pertinent language appearing in the comparable provision of the New Jersey implementation of the Interstate Agreement on Detainers was identical to the Virginia Code version. See N.J. Stat. Ann. § 2A:159A-5, art. V(f).

The plain language of the Interstate Agreement on Detainers provides that Virginia only gained "temporary custody" of Carroll during the 288 days he spent in Virginia incident to his trial.  Code § 53.1-210, art. V(d).  The statutory language narrowly defines such "temporary custody" and limits its scope to allow the receiving state to only prosecute the transferred prisoner for the charges for which the transfer was made.  Under the Interstate Agreement on Detainers, Carroll remained a New Jersey prisoner and received credit toward his New Jersey sentence for time spent in Virginia.  Thus, our inquiry focuses on whether, under Virginia law, Carroll is also entitled to credit toward his Virginia sentence for those same 288 days.  Code § 53.1-187 provides, in pertinent part:

> Any person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial . . . .

The sentencing order in this case reflected this mandate when it provided that Carroll "shall be given credit for time spent in confinement while awaiting trial pursuant to Code § 53.1-187."  The decisive factor is whether Carroll was in Virginia custody "awaiting trial" during the 288 days.  The Interstate Agreement on Detainers makes it clear that he was not.  As previously stated, Carroll was transferred to

18

Virginia for the sole purpose of being tried on his pending Virginia charges. The Interstate Agreement on Detainers strictly limits Virginia's "temporary custody" in such situations. As such, Carroll was not in Virginia custody "awaiting trial," but was in Virginia custody to stand trial pursuant to the Interstate Agreement on Detainers as a New Jersey prisoner.

While Carroll was in Virginia custody, he was actually serving his New Jersey sentence because the Interstate Agreement on Detainers provides that he receive credit toward his New Jersey sentence for that time. Code § 53.1-210, art. V(f); N.J. Stat. Ann. § 2A:159A-5, art. V(f). Thus, as a matter of law, Carroll is not entitled to credit toward his Virginia sentence for the 288 days he spent in Virginia custody incident to his trial because he was in Virginia's temporary custody as a New Jersey prisoner for the limited purpose of being tried on his pending Virginia charges. In addition, the Virginia sentencing order required that his sentences of 13 years be served consecutively with all other sentences, including the New Jersey sentence to which the 288 days were credited.

Because Carroll is not entitled to credit toward his Virginia sentence as a matter of law, the circuit court did not err in denying Carroll's petition for habeas corpus on the

19

merits.  The circuit court also did not err in denying Carroll an evidentiary hearing because we determined that Carroll's claim, as a matter of law, is without merit, leaving nothing to be determined by a factfinder.

## Conclusion

The circuit court erred in holding that it did not have habeas corpus jurisdiction over Carroll's claim because an order entered in his favor would have resulted in shortening the time he must serve in confinement.  For the reasons we stated, the circuit court did not err in denying Carroll's petition for a writ of habeas corpus on the merits because, under the Interstate Agreement on Detainers, and Virginia law, Carroll was not entitled to credit for the 288 days he spent in temporary custody in Virginia.

Reversed in part,
affirmed in part,
and final judgment.