Present: All the Justices

RODNEY W. DORR

OPINION BY
v. Record No. 112131          JUSTICE DONALD W. LEMONS
                              November 1, 2012
HAROLD CLARKE, DIRECTOR

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
John E. Wetsel, Jr., Judge

In this appeal, we consider whether the Circuit Court of Frederick County ("circuit court") erred when it held that Rodney Wade Dorr ("Dorr") was not entitled to credit toward his Virginia sentence for the period he was detained in a Virginia jail awaiting trial. At that time, he was a West Virginia prisoner receiving credit toward his West Virginia sentence. We also consider whether the circuit court erred when it recharacterized Dorr's pleading, without providing him notice and an opportunity to be heard.

I. Facts and Proceedings Below

On February 26, 2009, Dorr was convicted of "one Felony Count of Entry of a Dwelling House without Breaking by virtue of his Plea of Guilty" in the Circuit Court of Berkeley County in West Virginia (the "West Virginia court"). The West Virginia court sentenced Dorr to "a term of not less tha[n] one (1) year and no more than ten (10) years in the Penitentiary House of th[at] State" and ordered his "[s]entence shall run

. . . current with any sentence imposed in the Commonwealth of Virginia after February 26, 2009."

Dorr was serving his West Virginia prison sentence when he was transferred from West Virginia to Virginia on August 20, 2009, pursuant to the Interstate Agreement on Detainers, Code §§ 53.1-210 through -215, to stand trial on criminal offenses in Frederick County, Virginia. Dorr was housed in the Northwestern Regional Adult Detention Center (the "Detention Center") in Frederick County while awaiting trial. On January 5, 2010, Dorr was found guilty in the Circuit Court of Frederick County of three felony grand larceny offenses, one felony offense of eluding, and one misdemeanor offense of driving on a suspended license.

On April 22, 2010, Dorr appeared before the circuit court for a sentencing hearing on those five offenses. The circuit court imposed sentences, pursuant to a plea agreement, as follows: (1) a total of five years' imprisonment on the three grand larceny charges; (2) ninety days' imprisonment on the eluding charge; and (3) thirty days' imprisonment on the charge of driving on a suspended license. The circuit court suspended four years of Dorr's total sentence of five years and one hundred and twenty days. The sentencing order stated: "The defendant shall be given credit for time spent in confinement

2

while awaiting trial, pursuant to Virginia Code Section 53.1-187."[1]

On April 29, 2010, Dorr was transferred back to West Virginia to serve the remainder of his sentence in that state. The Virginia Department of Corrections ("VDOC") received a document from the Administrator of the Detention Center titled "Credit For Time Spent in Jail," which contained the amount of time Dorr was sentenced for each of his Virginia convictions. The "Credit For Time Spent in Jail" document also contained a section titled "Jail Credit Information," which showed that Dorr was to receive credit toward his Virginia sentences for the time he spent in the Detention Center from August 20, 2009 until April 29, 2010, when he was transferred back to West Virginia.

After Dorr finished serving his West Virginia sentence, he was transferred back to Virginia to serve his sentence on the five offenses for which he was convicted in the Commonwealth. VDOC provided Dorr with a "legal update" sheet shortly after his arrival, which indicated that he had not received credit for the time spent incarcerated from August 20, 2009 until April 29, 2010.

---

[1] Code § 53.1-187 provides, in relevant part, that "[a]ny person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial . . . ."

On July 1, 2011, Dorr, proceeding pro se, filed a motion for a writ of mandamus (the "petition") in the circuit court against Harold Clarke ("Clarke"), the Director of VDOC, asking the court to order VDOC "to comply with [the circuit court's] order . . . giving [Dorr] full credit for time spent incarcerated on the current charges he is now serving." Specifically, Dorr claimed that he should receive credit for his time in the Detention Center from August 20, 2009 to April 29, 2010. The circuit court ordered VDOC to file a response to Dorr's petition.

In response, Clarke moved to dismiss Dorr's petition, recharacterizing his "motion of mandamus"[2] as a petition for writ of habeas corpus because Dorr requested relief in the form of a shorter period of incarceration. Clarke argued that the time Dorr alleged should be credited toward his sentence was properly applied toward his out-of-state sentence because, at that time, he was still a West Virginia state prisoner serving time on his West Virginia sentence. Clarke also argued that Dorr "is not entitled to receive credit for time served on charges in one jurisdiction on his sentence from different charges in a different jurisdiction unless" the Virginia court ordered that, pursuant to Code § 19.2-308, the sentences be

_____

[2] Although Dorr labeled his pleading "motion of mandamus," this opinion will refer to it as a "motion for mandamus."

4

served concurrently. Although Dorr alleged in his petition that "[t]he West Virginia court imposed [his] sentence to run 'current' with any sentence imposed in the Commonwealth of Virginia after February 26, 2009," Clarke argued that Virginia is not bound by the West Virginia order.

Dorr filed a response to Clarke's motion to dismiss, requesting that the circuit court deny Clarke's motion. Dorr responded that he had filed a motion for mandamus asking the circuit court to order VDOC to give him credit for time served because the sentencing order provided that Dorr "shall be given credit for time spent in confinement while awaiting trial, pursuant to Virginia Code Section 53.1-187."

In its September 13, 2011 order, the circuit court concluded that Dorr's motion for writ of mandamus was in fact a petition for a writ of habeas corpus and that Dorr "was on detainer from West Virginia [from August 20, 2009 to April 29, 2010] and continued to serve his West Virginia sentence during that time." The circuit court held that: (1) Dorr was "not entitled to receive credit for time served on charges in one [sic] another state on his later sentence from different charges in Virginia"; (2) Dorr "has been afforded all credit for time served for which he is entitled"; and (3) Dorr's "time has been accurately computed in accordance with Virginia

statutes and VDOC time computation practices."  Consequently, the circuit court dismissed Dorr's petition.

Dorr timely filed his petition for appeal, and we granted Dorr's appeal on the following assignments of error:

1. The circuit court judge erred when he allowed the respondent to recharacterize the pleading to the court, without first giving the petitioner ample notice, or the opportunity to withdraw or amend the pleading, nor informing him of the consequences.

2. The circuit court judge erred in dismissing the motion of mandamus, and not ordering that the respondent, Va. D.O.C., was to abide by the April 22, 2010 court order stating that the defendant is to be credited for all time spent incarcerated prior to conviction and sentencing.

## II. Analysis

### A. Standard of Review

The issue whether the circuit court erred in recharacterizing Dorr's motion for a writ of mandamus as a petition for a writ of habeas corpus is a question of law and, therefore, we review the record de novo on appeal.  Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006).  Regardless whether Dorr's petition is characterized as a mandamus petition or a habeas petition, we review the circuit court's decision to deny his petition de novo.  See Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008); Green v. Young, 264 Va. 604, 608-09, 571 S.E.2d 135, 138 (2002).  "[T]he determination whether mandamus lies as an extraordinary remedy

6

[is a] question[] of law subject to de novo review upon appeal." Moreau, 276 Va. at 133, 661 S.E.2d at 845. Moreover, "whether a prisoner is entitled to habeas relief is a mixed question of law and fact. Consequently, a circuit court's conclusions of law are not binding on this Court but are subject to review to ascertain whether the circuit court correctly applied the law to the facts." Green, 264 Va. at 608-09, 571 S.E.2d at 138 (citations omitted).

## B. Credit for Time Served

Dorr asserts that the circuit court erred in dismissing the motion for mandamus, and not ordering the respondent to comply with the April 22, 2010 court order stating that the defendant is to be credited for all time spent incarcerated prior to conviction and sentencing. The Interstate Agreement on Detainers "is a congressionally sanctioned interstate compact within the Compact Clause" of the United States Constitution. Carchman v. Nash, 473 U.S. 716, 719 (1985). Dorr's transfer to Virginia from West Virginia was made pursuant to the Interstate Agreement on Detainers.[3] See Code § 53.1-210; W. Va. Code § 62-14-1. Article V(a) of the Interstate Agreement on Detainers provides that a state where a prisoner is currently incarcerated (the sending state) may send

---

[3] Both Virginia and West Virginia are party states. Code § 53.1-210; W. Va. Code § 62-14-1.

7

that prisoner to another state where the prisoner has outstanding criminal charges (the receiving state) to stand trial. Code § 53.1-210, art. V(a); W. Va. Code § 62-14-1, art. V(a). Article V(d) of the Interstate Agreement on Detainers describes this process as "temporary custody," and provides that:

> The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

Code § 53.1-210, art. V(d); W. Va. Code § 62-14-1, art. V(d).

Moreover, Article V(f) of the Interstate Agreement on Detainers provides that "[d]uring the . . . temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence [imposed by the sending state] shall continue to run . . . ." Code § 53.1-210, art. V(f); W. Va. Code § 62-14-1, art. V(f). Article V(g) of the Interstate Agreement on Detainers further states that:

> For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state and any escape from temporary custody may be dealt with in the

same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

Code § 53.1-210, art. V(g) (emphasis added); W. Va. Code § 62-14-1, art. V(g) (emphasis added).

Based on the plain language of the Interstate Agreement on Detainers, Virginia gained "temporary custody" of Dorr when he was sent from West Virginia to Virginia to stand trial on the five criminal offenses in Frederick County. Code § 53.1-210, art. V(a)&(d); W. Va. Code § 62-14-1, art. V(a)&(d). While in Virginia, Dorr "remain[ed] in the custody of and subject to the jurisdiction of [West Virginia]." Code § 53.1-210, art. V(g); W. Va. Code § 62-14-1, art. V(g). Dorr remained a West Virginia prisoner and received credit toward his West Virginia sentence from August 20, 2009 until April 29, 2010, while he was incarcerated in Virginia. See Code § 53.1-210, art. V(g); W. Va. Code § 62-14-1, art. V(g). Accordingly, we must consider whether Dorr should receive credit toward his Virginia sentence for the time he spent in the Virginia Detention Center in addition to the credit he received toward his West Virginia sentence pursuant to the Interstate Agreement on Detainers.[4]

---

[4] At the Court's direction, the parties also addressed whether this matter is moot because of Dorr's release from Virginia custody in April 2012. After considering the question, the Court determines that the case is not moot.

9

We addressed a similar issue in Carroll v. Johnson, 278 Va. 683, 687, 685 S.E.2d 647, 648 (2009), where we considered whether John Carroll ("Carroll") "was entitled to a credit toward his sentence for time served awaiting trial in Virginia on a detainer from another state."  In language similar to that used by the Virginia sentencing court in the present case, in Carroll the sentencing order "provided that Carroll shall be given credit for time spent in confinement while awaiting trial pursuant to Code § 53.1-187."  Id. at 697, 685 S.E.2d at 654 (internal quotation marks omitted).  We concluded that:

> [w]hile Carroll was in Virginia custody, he was actually serving his New Jersey sentence because the Interstate Agreement on Detainers provides that he receive credit toward his New Jersey sentence for that time.  Thus, as a matter of law, Carroll is not entitled to credit toward his Virginia sentence for the 288 days he spent in Virginia custody incident to his trial because he was in Virginia's temporary custody as a New Jersey prisoner for the limited purpose of being tried on his pending Virginia charges.

Id. at 698, 685 S.E.2d at 654 (citations omitted).

Dorr argues that because the West Virginia sentencing order provided that his sentence was to "run concurrently with whatever sentence he received in Virginia," the present case is unlike Carroll and, therefore, Carroll does not control the resolution of this case.  We disagree.  Code § 53.1-187 states, in relevant part, that "[a]ny person who is sentenced to a term of confinement in a correctional facility shall have deducted

10

from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial . . . ."  Dorr's sentencing order, which contained similar language to Carroll's sentencing order regarding credit for time served, provided that Dorr "shall be given credit for time spent in confinement while awaiting trial, pursuant to Virginia Code Section 53.1-187."

As previously stated, Dorr received credit toward his West Virginia sentence while incarcerated in Virginia from August 20, 2009 until April 29, 2010.  See Code 53.1-210, art. V(g); W. Va. Code § 62-14-1, art. V(g).  Despite Dorr's argument that he is entitled to double credit because the West Virginia order provided that his sentence run "current with" subsequent Virginia sentences, Virginia law provides that "[w]hen any person is convicted of two or more offenses, and sentenced to confinement, such sentences shall not run concurrently, unless expressly ordered by the court."  Code § 19.2-308.  Importantly, Dorr's Frederick County sentencing order provided that "[t]he sentences imposed shall be served consecutively to and not concurrently with each other."

As we concluded in Carroll, we hold that, as a matter of law, Dorr is not entitled credit toward his Virginia sentence for the time he was incarcerated from August 20, 2009 until April 29, 2010, while he was in Virginia custody serving time

11

for his West Virginia sentence.  See Carroll, 278 Va. at 698, 685 S.E.2d at 654.

### C. Recharacterization of Dorr's Petition

Dorr argues that

> the circuit court cannot recharacterize a pro se litigant's motion as a petition for writ of habeas corpus unless the court notifies the petitioner that the court intends to recharacterize the pleading or warned the petitioner that the recharacterization means that any subsequent writs of habeas corpus will be restricted under Virginia Code § 8.01-654(B)(2).

Code § 8.01-654(B)(2) "is plain and unambiguous, clearly limiting the right of a prisoner to file successive petitions for writs of habeas corpus.  The key provisions of this statutory language focus on 'the time of filing' the first habeas petition."  Dorsey v. Angelone, 261 Va. 601, 603, 544 S.E.2d 350, 352 (2001).  Moreover,

> the provisions of Code § 8.01-654(B)(2) require a prisoner to include all claims that he intends to bring before the court in his first habeas petition.  Regardless of the manner in which that habeas petition is resolved, he may not thereafter file a subsequent habeas petition that seeks relief based upon any allegations of fact that were known to him at the time of the initial filing and not included therein.

Daniels v. Warden of the Red Onion State Prison, 266 Va. 399, 403, 588 S.E.2d 382, 384 (2003).

In Castro v. United States, 540 U.S. 375 (2003), the Supreme Court of the United States considered whether lower

12

courts may recharacterize a pro se litigant's motion as a request for habeas relief under 28 U.S.C. § 2255 ("§ 2255"). It concluded that the recharacterization powers of lower courts are limited in the following way:

> The limitation applies when a court recharacterizes a pro se litigant's motion as a first § 2255 motion. In such circumstances the district court must notify the pro se litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has. If the court fails to do so, the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's "second or successive" restrictions.

Castro, 540 U.S. at 383. We adopt this limitation on a trial court's power to recharacterize a pro se litigant's pleading in the present context. Virginia trial judges must notify pro se litigants of the potential consequences when recharacterizing their pleading. However, if thereafter the pro se litigant is given the opportunity to withdraw or amend the pleading to state all then-available claims and does not withdraw the pleading or agrees to the recharacterization after receiving notice and warning from the trial judge, then Code § 8.01-654 and its associated limitations apply.

Here, Dorr filed a motion for mandamus to compel VDOC to comply with the circuit court's sentencing order dated April 22, 2010. Clarke moved to dismiss Dorr's petition, recharacterizing his motion as a petition for a writ of habeas corpus. Dorr responded that he sought mandamus relief, not habeas corpus relief, and requested that the circuit court deny Clarke's motion. The circuit court then recharacterized Dorr's motion, without providing him notice or an opportunity to be heard, and ordered that his petition be dismissed. Accordingly, we hold that Dorr's petition cannot be considered his first habeas petition for purposes of limiting his right to file a subsequent habeas petition under Code § 8.01-654.

Moreover, we conclude that a pro se litigant is not limited to challenging an unwarned recharacterization on appeal, but may do so when a later-filed habeas petition is challenged as being a second habeas application barred by the successive petitions provision of the statute. "[T]he very point of the warning is to help the pro se litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should contest the recharacterization, say, on appeal." Castro, 540 U.S. at 384 (emphasis in original). Therefore, "[t]he 'lack of warning' prevents [the pro se litigant from] making an informed judgment in respect to the latter just as it does in respect to the former." Id.

14

Accordingly, we hold that "an unwarned recharacterization cannot count as a [habeas petition] for purposes of the 'second or successive' provision [in Code § 8.01-654(B)(2)], whether the unwarned pro se litigant does, or does not, take an appeal." See Castro, 540 U.S. at 384.

Despite this, "[u]nder the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." Forbes v. Rapp, 269 Va. 374, 382, 611 S.E.2d 592, 597 (2005). Here, Dorr challenged the recharacterization of his petition on appeal; however, he is not required to do so until his first actual habeas petition is challenged as being a second or successive habeas petition barred by the successive petitions provision of Code § 8.01-654. Regardless of the characterization of his petition, Dorr was not entitled to credit toward his Virginia sentence from August 20, 2009 until April 29, 2010, because during this time period he was serving time for his West Virginia sentence. Accordingly, we hold that the recharacterization could not have affected the circuit court's conclusion because, under the rule we announce here, Dorr would not be barred from filing a future petition for a writ of habeas corpus as a successive habeas petition, and the circuit court properly concluded that Dorr was not entitled to

15

credit toward his Virginia sentence for the time he spent in the Detention Center from August 20, 2009 until April 29, 2010.

### III. Conclusion

We hold that: (1) the circuit court did not err in denying Dorr's petition because he was not entitled to credit toward his Virginia sentence from August 20, 2009 until April 29, 2010; (2) the circuit court erred in recharacterizing Dorr's petition without providing him notice and the opportunity to be heard; and (3) the error was harmless because Dorr was not required to challenge the recharacterization on appeal and he was not entitled to credit toward his Virginia sentence from August 20, 2009 until April 29, 2010.

For these reasons, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.