PRESENT: All the Justices

STEVEN PATRICK PREASE

v. Record No. 220665

OPINION BY
JUSTICE CLEO E. POWELL
JULY 6, 2023

HAROLD CLARKE, in his official capacity
as Director of the Virginia Department of
Corrections, et al.

Upon a Petition for a Writ of Habeas Corpus

Invoking our original jurisdiction, the petitioner, Steven Patrick Prease ("Prease"), seeks

a writ of habeas corpus. In his petition, Prease contends that he is entitled to relief for his claim

that he was wrongfully denied earned sentence credits on his convictions for attempted

aggravated murder that, if awarded, would result in his immediate release from incarceration.

I. BACKGROUND

In 1994, the General Assembly enacted a system for prisoners convicted of a felony

committed on or after January 1, 1995, to earn sentence credits[1] as an incentive for good

behavior and rehabilitative activity while incarcerated.[2] Code §§ 53.1-202.2 et seq. Under this

system, all eligible prisoners could earn a maximum of 4.5 credits for every 30 days served. See

Code § 53.1-202.3 (effective until July 1, 2022). Additionally, the Virginia Department of

Corrections ("VDOC") essentially had unfettered discretion to regulate the rate at which credits

were earned. This included the ability to deduct earned sentence credits for violating

institutional rules, failure to participate in programs or violating other requirements established

---

[1] Each sentence credit equates to the "deduction of one day from a person's term of incarceration." Code § 53.1-202.2.

[2] Prisoners convicted before January 1, 1995, earn sentence credits under one of two separate systems, depending on the date of conviction. See Code §§ 53.1-192 through -202.1.

by VDOC. *See* Code § 53.1-202.4 (effective until July 1, 2022) (stating that VDOC shall (1) "[e]stablish the criteria upon which a person shall be deemed to have earned sentence credits;" (2) "[e]stablish the bases upon which earned sentence credits may be forfeited;" (3) "[e]stablish the number of earned sentence credits which will be forfeited for violations of various (i) institutional rules, (ii) program participation requirements or (iii) other requirements for the retention of sentence credits;" and (4) "[e]stablish such additional requirements for the earning of sentence credits as may be deemed advisable and as are consistent with the purposes of this article"). VDOC then developed a four-level system under which prisoners at the highest level, Level I, earned the full 4.5 credits per 30 days served and those at the lowest level, Level IV, earned no sentence credits.

In 2020, the General Assembly revised the statutory scheme governing earned sentence credits by amending Code § 53.1-202.3. 2020 Acts ch. 50 (Spec. Sess. I). The revised statutory scheme created a two-tier system whereby prisoners convicted of certain enumerated offenses could only receive 4.5 credits for every 30 days served. Code § 53.1-202.3(A). In contrast, prisoners convicted of an offense other than those enumerated in Code § 53.1-202.3(A) were eligible to receive expanded earned sentence credits. Code § 53.1-202.3(B). With regard to this second tier, the General Assembly essentially adopted VDOC's four-level classification system and provided specific criteria establishing eligibility for each level.[3] *Id.* Under the expanded earned sentence credit system, prisoners at Level I received 15 credits for every 30 days served;

[3] For example, Code § 53.1-202.3(B) provides that:
> Level I sentence credits shall be awarded to persons who participate in and cooperate with all programs to which the person is assigned pursuant to § 53.1-32.1 and who have no more than one minor correctional infraction and no serious correctional infractions as established by the Department's policies or procedures.

2

prisoners at Level II received 7.5 credits for every 30 days served; prisoners at Level III received 3.5 credits for every 30 days served; and prisoners at Level IV were not eligible to receive any sentence credits. *Id.*

The implementation of this two-tiered system was delayed until July 1, 2022. 2020 Va. Acts, Spec. Sess. I, Ch. 50. Additionally, the General Assembly specifically provided that "the provisions of § 53.1-202.3 of the Code of Virginia, as amended by this act, shall apply retroactively to the entire sentence of any person who is confined in a state correctional facility and participating in the earned sentence credit system on July 1, 2022." *Id.* In apparent recognition of the fact that applying the new expanded earned sentence credits might render some prisoners eligible for immediate release, the General Assembly further provided that,

> [i]f it is determined that, upon retroactive application of the provisions of § 53.1-202.3 . . . , the release date of any such person passed prior to the effective date of this act, the person shall be released upon approval of an appropriate release plan and within 60 days of such determination unless otherwise mandated by court order.

*Id.*

VDOC subsequently began determining which prisoners would be eligible and which of those prisoners would be entitled to release. When questions arose about whether certain offenses rendered prisoners ineligible to receive the expanded earned sentence credits, VDOC asked former Attorney General Mark Herring for an advisory opinion. Specifically, VDOC inquired whether the repeated use of the phrases "any violation" and "any felony violation" followed by a specific criminal statute in Code § 53.1-202.3(A) meant that prisoners who committed inchoate violations of the enumerated offenses were ineligible to receive expanded earned sentence credits. VDOC also questioned whether the absence of any specific reference to Code § 18.2-31, which defines the offense of aggravated murder, among the enumerated offenses

3

meant that prisoners convicted of inchoate offenses associated with that statute were eligible for expanded earned sentence credits.

In a December 2021 opinion, Attorney General Herring concluded that the reference in Code § 53.1-202.3 to "any violation" or "any felony violation" of a criminal statute indicated that the statute only embraces the completed offense and acting as an accessory before the fact or principal in the second degree to that offense. He explained that, because certain specific inchoate offenses were explicitly excluded from eligibility for expanded earned sentence credits, Code § 53.1-202.3(A) could not be interpreted to exclude other unmentioned inchoate offenses from eligibility. With regard to Code § 18.2-31, Attorney General Herring opined that the blanket exclusion of Class 1 felonies from eligibility only applies to convictions for the completed crime of aggravated murder, as well as accessories before the fact and principals in the second degree to that crime. He noted that conspiracy to commit aggravated murder and attempted aggravated murder do not fall within any portion of Code § 53.1-202.3(A), as those offenses are not Class 1 felonies, nor is Code § 18.2-31 one of the enumerated statutes. Therefore, according to Attorney General Herring, conspiracy to commit aggravated murder and attempted aggravated murder were eligible for expanded earned sentence credits.

In January 2022, Jason Miyares succeeded Mark Herring as Attorney General. Shortly thereafter, VDOC asked Attorney General Miyares to reconsider Attorney General Herring's conclusions with regard to Code § 53.1-202.3.

In March 2022, VDOC informed Prease that he would be released between July 1 and August 30, 2022, based on the retroactive application of expanded earned sentence credits under Code § 53.1-202.3. Prease had been convicted in November 2013 of two counts of attempted aggravated murder of a law enforcement officer under Code §§ 18.2-25 and -31, use of a firearm

4

in the commission of a felony under Code § 18.2-53.1, and misdemeanor assault and battery under Code § 18.2-57.2.[4]  In anticipation of his release, Prease obtained the required VDOC-approved release plan and made preparations for life outside prison.

In an April 2022 opinion, Attorney General Miyares disagreed with Attorney General Herring's interpretation of Code § 53.1-202.3.  He concluded that the phrases "any violation" and "any felony violation" of a criminal statute encompass the completed offense as well as the associated inchoate offenses (e.g., conspiracy, attempt, or solicitation to commit that offense). Attorney General Miyares further opined that conspiracy to commit aggravated murder and attempted aggravated murder were ineligible for expanded earned sentence credits.  In reaching this conclusion, Attorney General Miyares pointed to Code § 53.1-202.3(A)(2), which renders "[s]olicitation to commit murder under § 18.2-29 or any violation of §§ 18.2-32, 18.2-32.1, 18.2-32.2, or 18.2-33" ineligible for expanded earned sentence credits.

In the wake of Attorney General Miyares' opinion, VDOC determined that Prease's convictions for attempted aggravated murder rendered him ineligible for expanded earned sentence credits and revised his release date to June 4, 2024.  In October 2022, Prease petitioned this Court for a writ of habeas corpus, arguing that VDOC improperly denied him expanded earned sentence credits that would have resulted in his release shortly after July 1, 2022.

---

[4] As a result, Prease was sentenced to 30 years with 25 years suspended on each count of attempted aggravated murder of a law enforcement officer, 3 years for use of a firearm in the commission of a felony and 12 months for misdemeanor assault and battery, for a total sentence of 63 years plus 12 months, with all but 13 years plus 12 months suspended.

## II. ANALYSIS

In his petition, Prease argues that VDOC misinterpreted Code § 53.1-202.3(A) and, as a result, it miscalculated his release date.[5] Specifically, Prease contends that he is eligible for expanded earned sentence credits because Code § 18.2-31 is not one of the enumerated offenses that the General Assembly excluded from receiving the expanded earned sentence credits. The Commonwealth disagrees, insisting that the General Assembly clearly did not intend for an individual convicted of attempted aggravated murder to receive expanded earned sentence credits.

In reviewing statutory language, we have consistently explained that

> Virginia courts "presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011). We believe it to be "our duty to interpret the statute as written and

---

[5] In addressing the issue of jurisdiction to award habeas relief in cases challenging the calculation of sentence credits, we have explained that "[Code § 8.01-654(A)(1)] extends the availability of the writ of habeas corpus to prisoners who claim they are 'detained without lawful authority.'" *Carroll v. Johnson*, 278 Va. 683, 693 (2009). We have interpreted the phrase "detained without lawful authority" to mean that habeas relief is available when "an order entered in the petitioner's favor will result in a court order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement." *Id.* (emphasis added). In other words, the mere potential to reduce the duration of confinement is not sufficient to warrant habeas relief. *Id.* at 694.

Code § 53.1-202.4 makes clear that earned sentence credits can be forfeited. Indeed, Code § 53.1-202.4(3) states that earned sentence credits can be "forfeited for violations of various (i) institutional rules, (ii) program participation requirements or (iii) other requirements for the retention of sentence credits." As there is the possibility that earned sentence credits can be forfeited, a challenge to the calculation of those credits will usually only result in a *potential* impact on the duration of confinement. Therefore, this Court generally lacks jurisdiction to award habeas relief with regard to the calculation of earned sentence credits.

The present case, however, represents an exception to this general rule. Here, Prease filed his habeas petition *after* the date he would have been released if he was eligible to earn expanded sentence credits. In other words, his assertion is that VDOC's alleged miscalculation of credits resulted in the extension of his detention without lawful authority. Under these circumstances, a ruling in Prease's favor will have a direct impact on the duration of his confinement – it will result in his immediate release. Accordingly, we have jurisdiction to consider Prease's habeas petition.

6

when this is done our responsibility ceases." *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221 (1941). The one canon of construction that precedes all others is that "[w]e presume that the legislature says what it means and means what it says." *In re: Woodley*, 290 Va. 482, 491 (2015).

*Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc.*, 291 Va. 269, 277 (2016).

By its plain language, Code § 53.1-202.3 establishes that all inmates are eligible for expanded earned sentence credits unless they were convicted of an offense that is enumerated under subsection A. *See* Code § 53.1-202.3(B) ("For *any* offense *other than those enumerated in subsection A* for which sentence credits may be earned, earned sentence credits shall be awarded and calculated using the following four-level classification system.") (emphases added). As such, the dispositive issue here is whether attempted aggravated murder is one of the enumerated offenses that is ineligible for expanded earned sentence credits under subsection A.

Code § 53.1-202.3(A)(1) states that "[a] maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence for a conviction for any . . . Class 1 felony." Aggravated murder is a Class 1 felony, *see* Code § 18.2-31. Therefore, a person convicted of aggravated murder is ineligible to receive expanded earned sentence credits. Prease, however, was not convicted of aggravated murder, he was convicted of *attempted* aggravated murder. This distinction is important because attempted aggravated murder is not a Class 1 felony; it is a Class 2 felony. *See* Code § 18.2-25 ("If any person attempts to commit an offense that is punishable as a Class 1 felony, he is guilty of a Class 2 felony."). As the plain language of Code § 53.1-202.3(A)(1) establishes that it only applies to convictions for Class 1 felonies, Code § 53.1-202.3(A)(1) does not operate to exclude individuals convicted of attempted aggravated murder from eligibility to receive expanded earned sentence credits.

The remainder of Code § 53.1-202.3(A) enumerates a number of specific offenses that are also ineligible for expanded earned sentence credits. Notably, attempted aggravated murder

is not one of those enumerated offenses. Thus, it would appear that there is no basis in the governing statutes for denying Prease expanded earned sentence credits on his attempted aggravated murder convictions.

The Commonwealth, however, insists that the verbiage used throughout Code § 53.1-202.3(A) indicates that the General Assembly intended to exempt actual violations of the enumerated statutes as well as the associated inchoate crimes from receiving expanded earned sentence credits. Specifically, the Commonwealth focuses on Code § 53.1-202.3(A)(2), which states, in relevant part, that a conviction for "*any violation* of § 18.2-32, 18.2-32.1, 18.2-32.2, or 18.2-33" is ineligible for expanded earned sentence credits. (Emphasis added.) In making this argument, the Commonwealth appears to conflate Code § 18.2-32, the statute defining first- and second-degree murder, with Code § 18.2-31, the statute defining aggravated murder.[6] As the present case deals with Code § 18.2-31, which is conspicuously absent from the list of enumerated offenses under Code § 53.1-202.3(A), we do not consider the Commonwealth's argument on this point.

The Commonwealth next claims that the General Assembly clearly intended to exclude individuals convicted of attempted aggravated murder from receiving expanded earned sentence credits because it included solicitation to commit murder, a significantly less serious and dangerous crime than attempted aggravated murder, on the enumerated list. *See* Code § 53.1-202.3(A)(2). The Commonwealth posits that, if a person convicted of solicitation to commit murder was ineligible to receive expanded earned sentence credits, while a person convicted of attempted aggravated murder remained eligible, such a result would be absurd. We have

---

[6] Indeed, in its brief, the Commonwealth expressly identified Code § 18.2-32 as "the aggravated murder statute." (MTD 10).

8

repeatedly explained that "[a]n absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation." *City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021). Neither of those situations applies here.

Moreover, the public policy implications associated with the General Assembly's inclusion of less serious offenses do not factor into our interpretation of Code § 53.1-202.3.

> The legislature is "the author of public policy." *Campbell v. Commonwealth*, 246 Va. 174, 184 n. 8 (1993). For us, then, "the 'best indications of public policy are to be found in the enactments of the Legislature.'" *City of Charlottesville v. DeHaan*, 228 Va. 578, 583 (1984) (quoting *Mumpower v. Housing Auth. of Bristol*, 176 Va. 426, 444 (1940)). "We can only administer the law as it is written." *Coalter v. Bargamin*, 99 Va. 65, 71 (1901). We may not extend the meaning of a statute "simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *Franklin & Pittsylvania Ry. Co. v. Shoemaker*, 156 Va. 619, 624 (1931) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

*In re Woodley*, 290 Va. 482, 490 (2015).

### III.  CONCLUSION

For the foregoing reasons, we will grant Prease's petition and issue a writ of habeas corpus directed to Harold Clarke, Director of the Virginia Department of Corrections ordering that Prease be released from custody.

*Writ Awarded.*