**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6524

GARY WALL,

        Petitioner - Appellant,

    v.

WARDEN JEFFREY KISER,

        Respondent - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00066-EKD-RSB)

Argued:  September 21, 2021             Decided:  December 27, 2021

Before GREGORY, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Richardson joined.  Judge Gregory wrote a dissenting opinion.

**ARGUED:**  Lauren Elizabeth Bateman, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Jessica Merry Samuels, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF:** Erica Hashimoto, Director, Nicolas Sansone, Supervising Attorney, Nicholas Kennedy, Student Counsel, Samuel Ruddy, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Richard C. Vorhis, Senior Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Zachary

R. Glubiak, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

─────────────

NIEMEYER, Circuit Judge:

In his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, a state-convicted inmate seeks to apply retroactively a federal procedural rule first announced in 2019 to overturn the result of his state disciplinary proceedings that took place in 2015. The question that this appeal presents is whether the principles articulated in *Teague v. Lane*, 489 U.S. 288 (1989), prohibiting the retroactive application of procedural rules on federal collateral review, apply to bar the inmate's effort in the circumstances of this case.

While serving a sentence at the Red Onion State Prison in Pound, Virginia, Gary Wall was charged in 2015 with assaulting two corrections officers during an altercation. At the hearings on those charges, the hearing officers denied Wall's requests that they review the surveillance video of the incident. After denying Wall's requests, the hearing officers found Wall guilty of the assault charges and stripped him of a total of 270 days accrued good conduct sentence credits. Wall filed administrative appeals, which were unsuccessful, and then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging that the hearing officers denied him due process of law in refusing to review the video footage. The court, however, ruled that it lacked jurisdiction to review a decision resulting in a loss of good conduct credits and dismissed Wall's petition. Wall did not seek review in the U.S. Supreme Court, but he did file a separate action under 42 U.S.C. § 1983 that also challenges the prison hearings, and that case is still pending.

Wall filed this federal petition for habeas relief under § 2254, claiming that the state prison hearing officers denied him the constitutional right to due process recognized in *Wolff v. McDonnell*, 418 U.S. 539 (1974), when they denied his multiple requests that they

3

view the surveillance video of the altercation. Applying the then-current law, the district court denied Wall relief and dismissed his petition by order dated March 31, 2019. The court stated that although Wall had, in accordance with *Wolff*, a qualified due process right to present documentary evidence at the prison hearings, surveillance footage was, under the applicable law, "outside the definition of 'documentary evidence.'" From the district court's order, Wall filed this appeal.

In 2019, while Wall's appeal was pending, we issued our decision in *Lennear v. Wilson*, where we held "for the first time in this circuit" that, under *Wolff*, inmates subject to a loss of good time credits "have a qualified right to obtain and compel consideration of video surveillance evidence." 937 F.3d 257, 273–74 (4th Cir. 2019) (emphasis omitted).

Wall now argues that he is entitled to the retroactive application of *Lennear* to his 2015 disciplinary proceedings and that the general principles prohibiting retroactive application of new procedural rules on collateral review, as recognized in *Teague*, do not apply to the circumstances in this case. We conclude, however, that the retroactivity principles stated in *Teague* do indeed apply and that they preclude retroactive application of *Lennear* to this case. Accordingly, we affirm.

I

In August 2015, while incarcerated at the Red Onion State Prison with a sentence imposed in 1995 of over 40 years' imprisonment, Gary Wall was involved in an altercation with two corrections officers, Elijah Rasnick and Jason Hicks, resulting in injury to both Wall and the officers. Wall was charged with disciplinary offenses, including aggravated

4

assault against both Rasnick and Hicks. Hearings on the charges were conducted separately as to each officer.

Before and during the hearings, Wall repeatedly — both orally and in writing — requested that the hearing officers review surveillance video of the underlying incident, and those requests were denied. On his written request, which was made on a prison form, the hearing officers responded by checking a box stating that "information will not be obtained due to being from an outside source, restricted for security reasons such as video and audio recordings, information is not written documentation, or is otherwise restricted to the offender." (Cleaned up). At the hearing on the Rasnick charge, the hearing officer did receive testimony summarizing the video from Captain Still, an officer who had investigated the incident. Wall was found guilty at each hearing, and a total of 270 days of his accrued good conduct credits were revoked.

Wall appealed both decisions administratively, claiming that the hearing officers erred in refusing to review the video. Both the Warden and the Regional Administrator for the Virginia Department of Corrections denied relief.

After exhausting his administrative appeals, Wall filed a pro se petition for a writ of habeas corpus in the Virginia Supreme Court, alleging due process violations and seeking the restoration of his good conduct credits. The court, however, dismissed the petition, ruling that it lacked habeas jurisdiction over "institutional proceeding[s] resulting in loss of good conduct . . . credit." In reaching its judgment, the court relied on its decision in *Carroll v. Johnson*, 685 S.E.2d 647, 652 (Va. 2009), and quoted *Carroll*'s language that habeas relief is available only when an order will "directly impact the duration of a

petitioner's confinement." The Virginia Supreme Court's ruling thus implied that an order resulting in the loss of good conduct credits does not impact an inmate's confinement. Wall did not seek to challenge that ruling in the U.S. Supreme Court. Instead, he filed a second habeas petition in the Virginia Supreme Court, which was again denied based on that court's earlier ruling. Thus, with the Virginia Supreme Court's judgment, Wall's state proceedings came to an end.

Wall then filed this federal habeas petition under § 2254, contending that the state hearing officers' failure to review the surveillance video violated his right to procedural due process, as articulated in *Wolff*. In *Wolff*, the Supreme Court held that an inmate at a disciplinary proceeding at which good conduct credits are at stake has a procedural due process right to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. Wall also submitted an affidavit averring that he had gained access to the surveillance video when state criminal charges were filed against him in connection with the same incident and that the video supported his side of the case. According to Wall, when the video was brought to the attention of the Commonwealth, it dropped the criminal charges against him.

On the Commonwealth's motion, the district court dismissed Wall's § 2254 petition, explaining that surveillance footage was "clearly outside the definition of 'documentary evidence,'" as defined in *Wolff*, and therefore that the hearing officers had not violated Wall's right to procedural due process when they failed to review that footage.

6

After Wall appealed to this court, we issued our opinion in *Lennear*, holding in 2019 *for the first time* that "prison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in *Wolff*." 937 F.3d at 269. In light of *Lennear*, we granted a certificate of appealability in this appeal on the question of whether "the prison disciplinary hearings failed to comport with the Due Process Clause because the hearing officers failed to review the surveillance video of the incident," with directions to "address [the] decision in *Lennear* . . . , and whether the retroactivity analysis announced in *Teague* . . . , and its progeny, applies in this case." By order dated January 29, 2020, we also appointed counsel to represent Wall, and we have much appreciated their fine and professional work.

II

*Teague* and its progeny establish that while "new procedural rules apply to cases pending in trial courts and on direct review," they "do not apply retroactively on federal collateral review." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1562 (2021). Moreover, "*Teague*'s nonretroactivity principle acts as a limitation on the *power* of federal courts to grant 'habeas corpus relief to . . . state prisoner[s].'" *Beard v. Banks*, 542 U.S. 406, 412 (2004) (emphasis added) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994)).

In this appeal, Wall argues that while *Lennear* announced a new rule, *Teague* does not apply because "[its] restrictions rest on finality and comity concerns raised when a federal court upsets a final judgment no longer subject to direct review — considerations not implicated by judicial review of a prison administrative decision. Where, as here, a

7

prisoner's first and only opportunity for judicial review of such a decision is federal habeas corpus, the habeas court must apply binding precedent like *Lennear*."  This argument implies, as Wall states explicitly, that his federal habeas petition does not involve collateral review but instead "direct judicial review" not subject to the *Teague* retroactivity principles.

We conclude that Wall's argument lacks both factual and legal support.

A

At the outset, we note that Wall is a state-incarcerated inmate who, pursuant to a final judgment of state courts, is serving a sentence of over 40 years.  And by virtue of state law, he can obtain a reduction of that sentence as a result of good conduct while in prison. *See* Va. Code Ann. § 53.1-202.2.  But an inmate's good conduct credits can also be revoked for misconduct while in prison.  *See id*. § 53.1-189.  Prison conduct therefore can, and does, affect an inmate's sentence and thus the duration of his custody.

When good conduct credits are revoked, state procedure requires that the inmate be given: (1) written notice, (2) a hearing, (3) the assistance of a staff member or fellow inmate for his defense, (4) a written statement of reasons for the revocation, and (5) a right to appeal administratively.  *See* Va. Admin. Code § 15-40-833.  And the administrative decision may be reviewed judicially by filing a petition for a writ of habeas corpus in a state circuit court or in the Virginia Supreme Court if the decision "impact[s] the duration of the [inmate's] confinement," such as the loss of good conduct credits.  *Carroll*, 685 S.E.2d at 652; *see also* Va. Code Ann. § 8.01-654.

In this case, Wall exhausted his state proceedings. He raised his objection to the denial of his request to have the hearing officers view the video footage both during his prison hearings and in his administrative appeals to the Warden and the Regional Administrator. And upon failing to obtain relief through that process, he sought review with his petition for a writ of habeas corpus in the Virginia Supreme Court. While that court relied on *Carroll* to hold that it did not have jurisdiction to review Wall's loss of good conduct credits, it apparently failed to recognize that *Carroll* construed Virginia Code § 8.01-654 to authorize the review of a loss of sentencing credits. *See* 685 S.E. 2d at 649–52. *Carroll* itself had relied on the federal habeas jurisprudence stated in *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), which held that habeas jurisdiction to review illegal sentences includes review of revocations or forfeitures of good conduct sentencing credits that extend an inmate's sentence. *See Carroll*, 685 S.E. 2d at 651. The Virginia Supreme Court in *Carroll* thus held:

> Code § 8.01-654(A)(1) allows a petitioner to challenge the lawfulness of the entire duration of his or her detention so long as an order . . . will directly impact the duration of the petitioner's confinement. Here, Carroll is "detained" for 13 years pursuant to his sentencing order, which includes the 288 days for which he is seeking credit. Thus, Carroll is "detained without lawful authority" within the meaning of the statute if his sentence, including the 288 days for which he seeks credit, is imposed without lawful authority.

685 S.E. 2d at 652. On Wall's petition, the Virginia Supreme Court did not purport to overrule *Carroll*; to the contrary, it cited it approvingly for support but then dismissed the petition stating that it lacked jurisdiction over proceedings involving "[the] loss of good conduct . . . credit."

9

Thus, while the Virginia Supreme Court denied Wall habeas relief from the administrative ruling, apparently misreading the decision on which it relied, Wall's petitions to that court exhausted state procedures, and his state case became final. It was final in the sense that state courts had nothing further to do with respect to Wall's claim for relief from the revocation of his good conduct credits, and Wall had no other state court to which to turn. *Cf. Beard*, 542 U.S. at 411; *Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)) (defining "final judgments").

In light of these procedural facts, Wall materially overstates his position when he asserts that the federal district court was the "only opportunity for judicial review" of the state administrative proceedings and that his habeas petition filed in the district court was in effect an effort to obtain "direct judicial review" of those proceedings. His argument fails to account for the fact that state habeas review in a state court *was available* even though, in his case, the state court may have erred in not reaching the merits of his claim. While the state court provided no relief, federal habeas relief was nonetheless available to Wall, as authorized under 28 U.S.C. §§ 2241 and 2254. But in the circumstance where a state court refuses to address a state inmate's claims, federal habeas review is collateral to the state proceedings and not a "direct review." As the Supreme Court has specifically pointed out,

> Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review.

*Teague*, 489 U.S. at 305 (plurality opinion) (quoting *Mackey v. United States*, 401 U.S. 667, 682–83 (1971) (Harlan, J., concurring in part and dissenting in part)).

10

In short, Virginia *made judicial relief available*, even though no Virginia court addressed the relief claimed. Wall's assertion that the district court was Wall's only "*opportunity*" for judicial review is a misstatement.

B

Wall's argument that federal habeas review in this case is "direct review" in which new procedural rules apply is also not legally supportable. The syllogism he presents begins with the premise that "new rules apply retroactively to cases 'pending *on direct review* or not yet final, with no exception.'" (Emphasis added) (quoting *Teague*, 489 U.S. at 304–05). Wall then asserts that he "has not yet obtained a judicial ruling on his due process claim that is final." And thus — arguing that because he had "no prior opportunity to obtain judicial review of a prison disciplinary decision" — he concludes that this federal habeas proceeding is a direct review to which *Lennear*, as a new rule, applies.

Again, this argument overlooks the totality of the state proceedings. But more importantly, it fails to consider that "habeas corpus always has been a collateral remedy" in that it is a writ providing relief independent of all other process. *Teague*, 489 U.S. at 305 (plurality opinion) (cleaned up). The Supreme Court has defined collateral review "according to its ordinary meaning" as "refer[ring] to judicial review that occurs in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 560 (2011). *Kholi* also reinforces the proposition that habeas corpus is a form of collateral review, without making any distinction regarding the proceeding a court is reviewing. *See id.* at

11

552 ("[O]ur cases make it clear that habeas corpus is a form of collateral review. We have used the terms habeas corpus and 'collateral review' interchangeably").

Furthermore, the concept of habeas as collateral review is not limited to proceedings that challenge the lawfulness of a prior *judgment*. The Supreme Court rejected any notion that collateral review should "turn on whether the motion or application that triggers that review is captioned as a part of the criminal case or as a separate proceeding." *Kholi*, 562 U.S. at 556–59 (finding that collateral review includes a motion to reduce a sentence). Furthermore, while federal habeas review in cases where state courts heard habeas claims but failed to explain why they rejected the petition are "infrequent," *Tyler v. Hooks*, 945 F.3d 159, 167 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2785 (2020), such federal habeas proceedings do occur and are still collateral review, as they are proceedings outside of the direct review process. Indeed, the Supreme Court has recognized that habeas corpus is a broad, independent writ designed to address challenges to any illegal custody, whether "by executive direction" or "by order of a court." *Preiser*, 411 U.S. at 484; *see also Fay v. Noia*, 372 U.S. 391, 408 (1963) (noting that at common law, the writ of habeas corpus redressed "restraints contrary to fundamental law, *by whatever authority imposed*" (emphasis added)).

While Wall's petition for a writ of habeas corpus in the Virginia Supreme Court was dismissed on jurisdictional grounds instead of being resolved on the merits, the federal petition here nonetheless invoked a collateral procedure, as it was filed outside of the direct review process. Wall's argument that *Teague* does not apply because the federal habeas corpus proceeding before us is a direct review of the state administrative proceedings is

12

simply untenable. That this is so is only reinforced by the fact that federal courts do not directly review state administrative proceedings, just as they do not directly review state court judgments. *See Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011).

C

Wall also suggests, as a possible alternative argument, that "'*Teague* has no application' *at all* to habeas petitions that, like Mr. Wall's, 'do not challenge the validity of [criminal] convictions or sentences,'" quoting our decision in *Plyler v. Moore*, 129 F.3d 728, 735 n.9 (4th Cir. 1997). But he allows that we "need not address" that issue because his federal habeas petition is the first review and therefore a direct review that is not covered by *Teague*.

Since we reject Wall's argument that the habeas proceeding before us is "direct review," we address Wall's alternative argument and conclude that it does not advance his position. As *Plyler* recognized in dictum, habeas is a collateral proceeding challenging the legality of "convictions or *sentences*," 129 F.3d at 735 n.9 (emphasis added), and that statement, at that broad level, is an accurate one. Habeas is a writ independent of other proceedings that at bottom affords a petitioner the opportunity to challenge *his custody*. *See Preiser*, 411 U.S. at 484. And challenges to custody can be grounded on either the *illegality of the conviction* giving rise to detention or the *duration of his detention* — his sentence. The writ is thus functional for challenges to both convictions and sentences, as summarily noted in *Plyler*.

13

Wall may nonetheless be suggesting that his habeas petition does not challenge the duration of his detention — his sentence — but rather the revocation of good conduct credits. But challenging the revocation of good conduct credits is indeed a challenge to the duration of detention. This has been conclusively established, beginning with the Supreme Court's decision in *Preiser*. In *Preiser*, the Court held that since good conduct credits affect the duration of detention, a challenge to their revocation falls within the heartland of habeas corpus jurisdiction. The Court stated:

> So, even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings.

411 U.S. at 487–88. Thus, *Plyler*'s statement that "*Teague* has no application here because the Inmates do not challenge the validity of their convictions or sentences," 129 F.3d at 735 n.9, rightly implied that *Teague* does indeed apply to habeas corpus proceedings that challenge a sentence, as Wall's petition does in contending that his sentence was illegally extended by 270 days.

At bottom, we conclude that Wall's § 2254 petition is a federal collateral proceeding, not direct review of a state administrative proceeding, and therefore *Teague*'s principle that a new procedural rule does not apply retroactively on federal collateral review governs.

## III

To determine whether the requirements of *Teague* are satisfied in this case, we need to determine (1) whether the state proceeding became "final"; (2) whether the *Lennear* rule is a "new rule"; and (3) whether the new rule is "procedural." *See Edwards*, 141 S. Ct. at 1554, 1562. We conclude that all are satisfied.

State convictions — or in this case, state orders extending a sentence — are final "for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Beard*, 542 U.S. at 411 (quoting *Caspari*, 510 U.S. at 390). For example, in *Caspari*, a defendant's conviction and sentence became final when a state court of appeals denied the petition for rehearing and the defendant did not file a petition for a writ of certiorari. 510 U.S. at 390–91. Here, the decision revoking 270 days of Wall's accrued good conduct credits became final when Wall exhausted his administrative appeals, as there was no *direct* appeal available in state court. He then filed two state habeas petitions that were dismissed by the Virginia Supreme Court. Wall did not file a petition for a writ of certiorari, and the time for doing so elapsed. With that, his state habeas proceedings became final as well. *Teague*'s finality requirement is thus readily satisfied here.

As to whether *Lennear* announced a new rule, we must determine whether it broke "new ground or impose[d] a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301 (plurality opinion). A rule is not new if "it was '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Edwards*, 141

15

S. Ct. at 1555 (quoting *Teague*, 489 U.S. at 301). As to the *Lennear* rule, our opinion recognized that "this Court, to date, has not addressed whether the universe of 'documentary evidence' subject to the due process protections recognized in *Wolff* encompasses video surveillance evidence." 937 F.3d at 268. Concluding that it does, we stated that "we establish *for the first time in this circuit* that inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain *and* compel consideration of video surveillance evidence." *Id*. at 273–74 (first emphasis added); *see also Tyler*, 945 F.3d at 168 (noting that *Lennear* "made plain that we established a prisoner's right to compel review of video surveillance evidence 'for the first time in this circuit'" (cleaned up)). We conclude that *Lennear* was a new rule, and the parties do not argue otherwise.

Finally, to complete the analysis, we need to determine if the new *Lennear* rule is procedural because new criminal *procedural* rules "do not apply retroactively on federal collateral review" — they only apply to cases that are "pending in trial courts and on direct review." *Edwards*, 141 S. Ct. at 1562. In explaining what constitutes a procedural rule, *Edwards* stated that procedural rules alter "only the manner of determining the defendant's culpability." *Id*. (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). There can be no doubt that *Lennear*'s new qualified right to obtain and compel consideration of video surveillance evidence is procedural. It only alters the manner in which the State determines a defendant's culpability.

In sum, we conclude that the nonretroactivity instruction in *Teague* applies to the circumstances here and that we therefore lack the power in this collateral proceeding to

16

apply *Lennear*'s new procedural rule to Wall's state disciplinary hearings that concluded some four years earlier.

IV

Wall argues on fairness grounds that a federal habeas court should provide him judicial access to address his arguments on the merits because no state court has done so. He states that his "habeas action challenges a detention decision never before judicially *examined*, let alone approved" and complains that the "State seeks to insulate its prison disciplinary decisions from due process scrutiny in *any* court." He argues that because "federal habeas is meant to 'preserv[e] for the state prisoner an expeditious federal forum for the vindication of his federally protected rights, if the State has denied redress,'" *Teague* cannot be read to bar such access. (Quoting *Preiser*, 411 U.S. at 498).

This argument, however, is belied by the fact that federal habeas procedure is indeed available to provide inmates such as Wall relief even when there is no available corrective process at the state level. *See* 28 U.S.C. § 2254(b)(1)(B)(i) (providing that federal habeas relief may be granted when "there is an absence of available State corrective process"). The issue is not whether a federal habeas court is available to him, but rather whether a federal habeas court considering Wall's claims can give Wall the benefit of a new procedural rule adopted four years after his state hearings concluded. Under *Teague*, the answer is no. Otherwise, the federal habeas court is authorized to consider any other argument challenging the legality of his state detention. Wall's fairness argument thus ultimately reduces to a critique of the fairness of the *Teague* rule itself.

17

But the *Teague* rule is both fair and necessary to our system of justice. In that system, defendants are convicted of misconduct and incarcerated under the procedural rules *then in effect*. Over time, those procedural rules are changed, often for the benefit of defendants. When a criminal or disciplinary proceeding against a defendant is ongoing when a procedural rule changes, we give the defendant the benefit of that new rule. But when the new procedural rule is made after the defendant's proceedings are completed, the defendant should not expect a redo to apply the new rule. The policies for this are compelling.

The principal considerations focus on the finality of decisions, the integrity of the judicial process, and comity with respect to state process. *See, e.g.*, *Linkletter v. Walker*, 381 U.S. 618, 636–37 (1965). In *Linkletter*, the Court noted that applying new procedural rules retroactively could "tax the administration of justice to the utmost" by requiring new hearings when evidence had long since been lost and witnesses have become unavailable. *Id*. at 637. Indeed, in *Edwards*, the Court observed that the principle of finality is "essential to the operation of our criminal justice system." 141 S. Ct. at 1554. Not only would reopened proceedings tax the system of justice with the potential for countless hearings with each new change to a procedural rule, but subsequent hearings could suffer from "lost evidence, faulty memory, and missing witnesses," to all parties' detriment. *Id*. (quoting *Allen v. Hardy*, 478 U.S. 255, 260 (1986) (per curiam)). As *Teague* stated, "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation." *Teague*, 489 U.S.

18

at 309 (plurality opinion) (quoting *Mackey*, 401 U.S. at 691 (Harlan, J., concurring in part and dissenting in part)).

The Supreme Court has also recognized that the application of new procedural rules on collateral review would continually force "the States to marshal resources in order to keep in prison defendants whose trials and appeals conform to then-existing constitutional standards." *Beard*, 542 U.S. at 413 (quoting *Teague*, 489 U.S. at 310). To put it "simply, the 'costs imposed upon the States by retroactive application of new rules of constitutional law on habeas corpus thus generally far outweigh the benefits of this application'" and also for this reason the Supreme Court "has repeatedly stated that new rules of criminal procedure ordinarily do not apply retroactively on federal collateral review." *Edwards*, 141 S. Ct. at 1555 (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990)). And particularly "in the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactivity ruling would have on the administration of all prisons in the country" and on "the reliance prison officials placed, in good faith, on prior law not requiring such procedures," taking into consideration the "burden on federal and state officials." *Wolff*, 418 U.S. at 574.

Finally, the Court has noted that without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions "shows only that conventional notions of finality should not have *as much* place in criminal as in civil litigation, not that they should have *none*." *Teague*, 489 U.S. at 309 (plurality opinion) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 150 (1970)).

The criminal justice system must do its best at the time of each defendant's proceeding by complying with the then-existing rules of procedure. But no proceeding is ever perfect, and applying new procedural rules retroactively would not make proceedings perfect. Indeed, applying new procedural rules retroactively would serve to make criminal process *less* perfect.

These policy concerns are implicated in the case before us. Wall was charged with assault of two corrections officers, and the prison hearings on those disciplinary charges were conducted in compliance with due process as it was then understood. After conducting the hearings, the Commonwealth provided Wall with appeals to the Warden and to the Regional Administrator, as well as the opportunity to file a habeas petition in a Virginia court. Moreover, to address his dissatisfaction with that state process — at least to the extent that it could be claimed to have violated the Constitution or federal law — he could obtain collateral review in a federal court pursuant to 28 U.S.C. §§ 2241 and 2254. But what he cannot do is claim in federal court the benefit of a new procedural rule that was not in effect at the time he pursued the state process.

The order of the district court denying Wall habeas relief is affirmed.

AFFIRMED

GREGORY, Chief Judge, dissenting:

Gary Wall was charged with institutional violations arising from a physical altercation with two corrections officers that left all three men injured. Despite conflicting accounts as to what occurred, the institution's hearing officers repeatedly denied Wall's requests that they review surveillance video of the incident. Instead, relying on evidence of the officers' injuries and the testimony of corrections officers—one of whom was not involved in the altercation but claimed to have reviewed the video—the hearing officers found that Wall had assaulted the corrections officers as alleged and stripped him of 270 days (nearly nine months) of accrued good-time credit.

But Wall later gained access to the video footage when he was charged criminally in state court for the alleged assaults. In his sworn affidavit, he avers that the video "clearly" demonstrates that he "never threw any punches at either officer as alleged." J.A. 93. According to Wall, the video also reveals that Wall did not cause the eye injury suffered by one of the officers; it was instead the result of the officer's "head-to-head collision" with another officer while Wall was "laying face-down, fully restrained in handcuffs and shackles." *Id.* Wall asserts that after reviewing the video evidence the county prosecutor declined to prosecute the criminal charges lodged against him. J.A. 94.

No court has addressed on the merits Wall's claim that the hearing officers' refusal to review potentially exculpatory video evidence violated his Fourteenth Amendment due process rights. But before we can reach the substance of Wall's claim, this Court must determine the applicability of *Teague v. Lane*, 489 U.S. 288 (1989), and its retroactivity analysis to Wall's case. Simply stated, if *Teague* applies, Wall cannot benefit retroactively

21

from the Court's favorable decision in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019), where this Court held that prisoners have a qualified due process right to obtain and present surveillance video evidence in prison disciplinary proceedings.

I conclude that *Teague* does not preclude federal habeas review of Wall's claim. *Teague*'s prohibition on the retroactive application of new rules of criminal procedure rests on finality and comity concerns not implicated by judicial review of prison administrative decisions. Here, Wall's first and only true opportunity for judicial review on the merits was on federal habeas review. Accordingly, his federal habeas petition is, in essence, direct, not collateral, review and not subject to *Teague*'s retroactivity principles. And applying retroactively the new procedural rule established in *Lennear* to the record now before this Court, I conclude that Wall was denied due process when the hearing officers refused to review video evidence of the altercation without any penological justification for doing so.

## A.

*Teague v. Lane* sets out rules about whether and when a new constitutional rule may be applied in habeas cases. The Commonwealth argues that *Teague* applies to all habeas cases, including Wall's. Wall contends that *Teague*'s application is limited to postconviction habeas cases where prisoners have had the opportunity to litigate their claims to final judgment in state court. In other words, *Teague* applies to judicially final cases, not administratively final ones. Further, Wall argues that because the Virginia Supreme Court declined to consider his case on the merits and thus offered no opportunity for review, his federal habeas petition does not involve collateral review but instead "direct

22

judicial review" not subject to *Teague*'s retroactivity principles. I agree with Wall that *Teague* does not bar federal courts from retroactively applying new rules of criminal procedure on direct review of prison administrative decisions, and thus, under the unique procedural posture of this case, where the state court did not consider Wall's claim on the merits, *Teague* does not prevent this Court from finding a violation of Wall's due process rights.

In *Teague*, the Supreme Court explained that new rules apply retroactively to cases "pending on direct review or not yet final, with no exception." *Teague*, 489 U.S. at 304–05 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). When a court has entered final judgment and no opportunities for appellate or certiorari review remain, *Teague* says that finality and comity considerations generally bar the application of new rules on collateral review of that final judgment. *See id.* at 308–10. But while *Teague* generally restricts the retroactive application of newly announced rules of criminal procedure, its rationale is based on finality and comity concerns that arise if a court were to overturn a final judgment no longer subject to direct review. A careful analysis of the facts in Wall's case demonstrates that neither circumstance is present here. His case involves judicial review of a prison administrative decision where Wall has not yet obtained a final judicial ruling on his due process claim, and where federal habeas corpus is Wall's first and only opportunity for judicial review of the administrative decision on the merits.

1.

Fourth Circuit precedent casts doubt on whether *Teague* is a natural fit in the prison disciplinary context since prison administrators' unreviewed decisions are not those of

23

courts and do not implicate comity concerns.  In *Tyler v. Hooks*, 945 F.3d 159, 167 (4th Cir. 2019), the Fourth Circuit held that AEDPA[1] deference does not apply in prison disciplinary cases because prison hearing officers and disciplinary systems are not "courts" for purposes of the federal habeas statute.  And in *Hamlin v. Warren*, 664 F.2d 29 (4th Cir. 1981), the Fourth Circuit drew a distinction between "attacks upon administrative actions affecting the fact or duration of sentence service" and "attack[s] upon the validity of a judgment of conviction."  *Id.* at 31.  The Court noted that "all of the reasons underlying the rule of comity are present in [an attack on the validity of a conviction] while none are present, or at least not highly visible, in controversies over good time credits."  *Id.*  It found that comity interests are not implicated where no state court judgment is involved.  *Id.*

Even more directly, in *Plyler v. Moore*, 129 F.3d 728 (4th Cir. 1997), this Court noted that, where the state had waived a *Teague* argument as it applied to a group of South Carolina prisoners challenging aspects of a furlough program through habeas, *Teague* had no application in any event "because the [i]nmates do not challenge the validity of their convictions or sentences."  *Id.* at 735 n.9 (citing *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997) (explaining that the *Teague* doctrine applies when a prisoner seeks to overturn his state *conviction or sentence*); *Helton v. Fauver*, 930 F.2d 1040, 1047 n.11 (3d Cir. 1991) (concluding that *Teague* did not apply to an Ex Post Facto challenge because the challenge

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) specifically limits habeas review where a claim has been "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d).

24

"does not implicate the policy favoring the finality of judgments that was at issue in *Teague*").

Based on our Circuit's precedent, the Majority's concerns regarding comity and judicial finality are misplaced in the narrow context that this case presents. *Teague* is simply a strange fit for this kind of non-conviction habeas claim. Here, there was no judicial proceeding at all, nor any resulting conviction. Nothing that occurs in a prison disciplinary hearing will ever affect the fundamental fairness of the underlying conviction, because the two circumstances are independent. Moreover, the Majority fails to establish that *Teague* applies outside the conviction context; it cites no cases holding that *Teague* applies beyond habeas cases challenging final criminal convictions and judicially-imposed sentences.

2.

The Majority's conclusion that the application of *Teague* bars Wall's federal habeas claim is also rooted in its finding that Wall had the opportunity for review in state court. But Wall's federal habeas petition is his first and only *true* opportunity for judicial review.

Wall first sought habeas review of his claim in state court. But the Virginia Supreme Court found that it lacked jurisdiction over institutional proceedings resulting in the loss of good time credit, based in part on its decision in *Carroll v. Johnson*, 685 S.E.2d 647 (Va. 2009), where that court held that habeas relief is available only when it "directly impact[s] the duration of a petitioner's confinement." *Id.* at 652. The Majority acknowledges that in denying Wall's request for habeas relief the Virginia Supreme Court failed to recognize that *Carroll* actually *authorized* the review of the loss of good time credits. *See* Maj. Op.

25

9. Indeed, the Virginia Supreme Court's misinterpretation and misapplication of its own precedent ultimately denied Wall consideration of his claim on the merits.

Nevertheless, according to the Majority, where a state court refuses to address a state inmate's claims—even in error—federal habeas review is collateral to a state proceeding and is not a "direct review." The Majority concludes that Wall "overstates his position when he asserts that the federal district court was the 'only opportunity for judicial review' of the state administrative proceedings and that his federal habeas petition filed in the district court was in effect 'direct judicial review' of those proceedings." Maj. Op. 10. Although the state court "provided no relief," the Majority finds it is enough that "state habeas review in a state court *was available* even though, in [Wall's] case, the state court may have erred in not reaching the merits of his claim." Maj. Op. 10. Despite conceding that Wall was improperly denied judicial review and thus "no Virginia court addressed the relief claimed," the Majority has determined that "Virginia made judicial relief available," and thus Wall's federal habeas petition was not "Wall's only opportunity for judicial review." Maj. Op. 11. The Majority has created its own standard without supporting authority. But making "judicial review available" is simply not the procedural equivalent of "opportunity for judicial review," particularly where that opportunity was improperly denied, nor does it satisfy procedural due process.

As the district court recognized, a claim is not "adjudicated on the merits" when a state court refuses to reach the merits and instead dismisses for lack of jurisdiction. Virginia provides no judicial review of good-time credit revocations, and as this Court has recognized, a current prisoner like Wall "may challenge the revocation of good-time

26

credits" in federal court "only by way of habeas corpus." *See Dilworth v. Corpening*, 613 F. App'x 275, 275 (4th Cir. 2015) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (2011)). Thus, when federal habeas corpus provides the only judicial means to challenge an administrative decision, a habeas court may retroactively apply new law because the court "effectively act[s] as if [it] were reviewing the issue on direct appeal," *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1172 (9th Cir. 2001), and so must apply existing rules of law regardless of when they were announced. *See Griffith*, 479 U.S. at 326. Under these principles, *Teague* does not bar this Court from applying *Lennear* to Wall's habeas petition because his claim, in essence, is on direct review.

Contrary to the Majority's concern, a ruling in favor of Wall would not open the floodgates to other litigation because only those cases by custodial prisoners who raise the same preserved issues, arising in the same procedural posture pre-*Lennear*, would be affected. Moreover, the procedural posture of Wall's case is identical to that which will be brought by prisoners in the future post-*Lennear*, with the exception of its timing. In other words, a prisoner unfairly denied access to video evidence in a disciplinary proceeding today will face the same path to this Court that Wall took. Given Virginia's stance on the scope of its habeas jurisdiction, there is no intervening party apart from the prison itself that could correct the problem before it arrives in federal court.

27

I conclude, therefore that *Teague*'s retroactivity principles do not apply in Wall's case, and thus do not preclude retroactive application of *Lennear*.[2] We turn then to the application of *Lennear* to the facts and circumstances of Wall's claim.

B.

Federal courts have long recognized that the revocation of prisoners' earned good-time credits implicates their procedural due process rights. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle them to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure [sic] that the state-created right is not arbitrarily abrogated.

*Id.* This Court has held that *Wolff* grants prisoners at risk of being deprived of a liberty interest, such as good time credits, a qualified right to obtain and present video surveillance evidence in disciplinary proceedings. *Lennear*, 937 F.3d at 262. Hearing officers are required to review the video evidence or establish a case-specific penological justification for refusing to do so. *Id.* at 272. In Wall's case, the hearing officers did neither.

---

[2] Wall argues that even if *Teague* bars the application of *Lennear* to his case that he is nevertheless entitled to habeas relief. In *Lennear*, this Court, without any precedent squarely dictating the outcome, relied on "existing—and controlling—Supreme Court and Fourth Circuit case law" to find in favor of the petitioner. 937 F.3d at 274. Wall maintains that without relying on *Lennear* as binding precedent, this Court could, because *Lennear* addressed a due process issue nearly identical to the issue presented in this case, rely on the "same body of controlling precedent underpinning *Lennear*'s holding" and find in Wall's favor. Appellant's Br. 21–22. Given that *Teague*'s retroactivity principles do not bar the application of *Lennear* to Wall's case, this Court need not address this alternative argument.

There is no dispute that Wall's hearing officers revoked his good-time credits after rejecting his account of the incident and refusing his repeated requests—both oral and in writing—to review the surveillance video that he maintained would corroborate his testimony. Accordingly, the hearing officers were required to provide a penological justification for their refusals. The Commonwealth demonstrates a penological interest that justifies denying access to video surveillance footage where it "establishes that providing the inmate with access to such evidence would be 'unduly hazardous to institutional safety or correctional goals.'" *Id.* at 270. This is a case-specific inquiry where the Commonwealth bears the burden of proof. *Id.*

On this record, the Commonwealth has not met its burden. At Wall's first hearing, his request for review of the video footage was denied because a corrections officer testified as to its contents. At his second hearing, the hearing officer denied the request for no apparent reason. These reasons (or the lack thereof) fail to provide the required case-specific penological justification. "Courts repeatedly have found procedural due process violations when hearing officers decline to consider video surveillance evidence—or other forms of documentary evidence—without offering a constitutionally cognizable justification for refusing to do so." *Id.* at 272.

As examples of these "procedural due process violations," this Court has cited *Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007), and *Piggie v. McBride*, 277 F.3d 922 (7th Cir. 2002). In *Howard*, a hearing officer refused to watch videotape evidence on the grounds that it would be "'needlessly cumulative' of staff reports." *Id.* at 814. We held that

29

the Tenth Circuit rightly reasoned that if prison officials could refuse to review documentary evidence—like the videotape evidence at issue—simply because it *might* prove "cumulative" of statements in staff reports, then inmates, who necessarily face a "credibility problem" in disciplinary proceedings, would be effectively deprived of potentially critical "evidence contradicting statements of prison staff."

*Lennear*, 937 F.3d at 272 (quoting *Howard*, 487 F.3d at 814)). The *Howard* court also reasoned that the hearing officer "could not possibly have known the videotape was needlessly cumulative without looking at it." *Howard*, 487 F.3d at 814. And in citing *Piggie*, this Court recognized that hearing officers "may not arbitrarily refuse to consider [potentially] exculpatory evidence simply because other evidence in the record suggests guilt." *Lennear*, 937 F.3d at 272 (quoting *Piggie*, 277 F.3d at 925).

And certainly, this Court's decision in *Lennear* itself establishes that accepting a corrections officer's version of contested events while refusing repeated requests to review surveillance video without a security or correctionally-related rationale has due process implications. This Court held not only that "prison surveillance evidence constitutes documentary evidence subject to the procedural due process recognized in *Wolff*," but also that access to such evidence is "an essential aspect of the inmate's due process right to 'marshal facts in his defense and present witnesses and documentary evidence'" in a disciplinary proceeding. *Id.* at 269 (quoting *Gibbons v. Higgins*, 73 F.3d 364, 364 (7th Cir. 1995)).

*Lennear* requires a demonstration that "consideration of [video] evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" 937 F.3d at 272 (quoting *Wolff*, 418 U.S. at 566). No such showing

30

was made here. Prison officials never alleged that any institutional safety or correctional goal was met by declining to review the video surveillance footage. The hearing officers simply chose to credit the testimony of two corrections officers over Wall's despite the availability of evidence that very likely would have resolved any factual dispute as to what occurred and addressed concerns regarding the credibility of witnesses. The hearing officers' refusals to permit Wall to view plainly relevant evidence—once because it was cumulative and once for no apparent reason—were clear violations of procedural due process as they provide no grounds to show that providing access to the video was unduly hazardous to institutional safety or correctional goals.

C.

The Commonwealth does not argue that any penological interest was met by the hearing officers' decisions not to review the video evidence. It argues instead that if *Lennear*'s new procedural rule applies retroactively to Wall's case, remand is appropriate to determine "whether the principles outlined in *Lennear* were met with respect to Wall's disciplinary proceedings and, if not, whether the error was harmless." Appellee's Br. 45. More specifically, the Commonwealth urges that it should be permitted on remand to establish any institutional concerns, supplement the record to support its justification for the hearing officers' actions, and argue that any violation of Wall's procedural due process rights was harmless error. Appellee's Br. 46.

Although prison officials "bear the burden to come forward with evidence of the reasons for denying an inmate's request for access to documentary evidence, including video surveillance footage, they 'may wait to assert such institutional concerns until after

31

the disciplinary hearing'" and can present those reasons "in court." *Lennear*, 937 F.3d at 270 (quoting *Ponte v. Real*, 471 U.S. 491, 497 (1985)). Because the district court did not have the benefit of this Court's ruling in *Lennear* when it denied Wall's habeas petition, and so that prison officials' compliance with *Lennear*'s due process standard may be litigated in the district court in the first instance rather than on appeal, remand to the district court is appropriate, with instructions to review Wall's claim on the merits. There, the district court can determine whether the prison officials had any justifiable penological reasons to deny Wall access to the video.

I caution, however, that the Commonwealth should not be permitted on remand to manufacture institutional safety or correctional concerns that did not exist, or otherwise present reasons that were not the true, contemporaneous reasons Wall's requests for review of the video evidence were denied. Moreover, the district court should take care on remand to apply the proper harmless error standard. "[I]n evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense. *Lennear*, 937 F.3d at 277; *see also Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Brennan v. United States*, 646 F. App'x 662, 666 (10th Cir. 2016) ("A [hearing officer's] failure to comply with the *Wolff* requirements is harmless when it does not prejudice an inmate's preparation or defense at a hearing."); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (asking whether excluded evidence "might have aided [the inmate's] defense").

32